# RECORD NO. 13-4284

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## LEARON CHATMON LITTLE,

*Defendant – Appellant.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### AT GREENSBORO

————————————

## BRIEF OF APPELLANT

————————————

**John Carlyle Sherrill, III**
**SHERRILL & CAMERON, PLLC**
**117 West Council Street**
**Salisbury, NC  28144**
**(704) 633-5723**

*Counsel for Appellant*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF SUBJECT MATTER
    AND APPELLATE JURISDICTION .............................................1

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF THE CASE...............................................................1

STATEMENT OF THE FACTS .............................................................2

SUMMARY OF ARGUMENTS............................................................5

ARGUMENT .......................................................................................6

    I.    THE DISTRICT COURT COMMITTED REVERSIBLE
        ERROR BY DENYING MR. LITTLE'S MOTION TO
        SUPPRESS THE EVIDENCE SEIZED BY LAW
        ENFORCEMENT WHICH WAS DISCOVERED AFTER
        OFFICERS ENTERED MR. LITTLE'S HOME WITHOUT
        PERMISSION OR A SEARCH WARRANT .....................................6

        STANDARD OF REVIEW ...................................................6

        DISCUSSION OF ISSUE ....................................................6

    II.    THE DISTRICT COURT COMMITTED REVERSIBLE
        ERROR IN ITS TREATMENT OF THE CONSOLIDATED
        NORTH CAROLINA JUDGMENT AS TWO SEPARATE
        SENTENCES RATHER THAN AS A SINGLE
        CONSOLIDATED SENTENCE .......................................................14

        STANDARD OF REVIEW .................................................14

        DISCUSSION OF ISSUE...................................................14

CONCLUSION ...................................................................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Brigham City v. Stuart*,
547 U.S. 398, 126 S. Ct. 1943, 164 L .Ed. 2d 650 (2006) ..........................8, 9

*Mora v. City of Gaithersburg*,
519 F.3d 216 (4th Cir. 2008) ...................................................................9, 10

*Payton v. New York*,
445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980) .............................11

*United States v. Bartram*,
407 F.3d 307 (4th Cir. 2005) ......................................................................... 14

*United States v. Carter*,
601 F.3d 252 (4th Cir. 2010) ......................................................................... 14

*United States v. Foster*,
634 F.3d 243 (2011) .........................................................................................6

*United States v. Hudson*,
272 F.3d 260 (4th Cir. 2001) ......................................................................... 14

*United States v. Kinter*,
235 F.3d 192 (4th Cir. 2000) ......................................................................... 14

*United States v. McCraw*,
920 F.2d 224 (4th Cir. 1990) ...................................................................10, 11

*United States v. Moss*,
963 F.2d 673 (4th Cir. 1992) ...........................................................................9

*United States v. Reed*,
935 F.2d 641 (4th Cir. 1991) .........................................................................13

*United States v. Seidman*,
156 F.3d 542 (4th Cir. 1998) ...........................................................................6

*United States v. Turner*,
    650 F.2d 526 (4th Cir. 1981) .................................................................10, 11

*United States v. Wysocki*,
    457 F.2d 1155 (5th Cir. 1972) ......................................................................11

*United States v. Yengel*,
    711 F.3d 392 (4th Cir. 2013) ...........................................................8, 9, 10, 11

*United States v. Zavier Davis*,
    No. 12-4346 (4th Cir. June 24, 2013)....................................................15, 16

*Wong Sun v. United States*,
    371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) ...................................13

**Statutes:**

28 U.S.C. § 1291 ................................................................................................ 1

N.C. Gen. Stat. § 15A-1340.15(a) ..................................................................15

**Constitutional Provision:**

U.S. Const. Amend. IV .......................................................................7, 8, 11, 13

**Guidelines:**

U.S.S.G. § 3E1.1(a)............................................................................................4

U.S.S.G. § 3E1.1(b) ...........................................................................................4

U.S.S.G. § 4A1.1(d) ...........................................................................................5

U.S.S.G. § 4B1.1(a)(3) .....................................................................................15

U.S.S.G. § 4B1.2(c) ..........................................................................................15

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This appeal is from a sentence imposed on March 15, 2013 against the defendant-appellant, Learon Chatmon Little.  (JA 102-107)  The judgment was entered on April 9, 2013.  Mr. Little filed a timely notice of appeal on April 15, 2013, 2013.  (JA 108)  This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    WHETHER THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY DENYING MR. LITTLE'S MOTION TO SUPPRESS THE EVIDENCE SEIZED BY LAW ENFORCEMENT WHICH WAS DISCOVERED AFTER OFFICERS ENTERED MR. LITTLE'S HOME WITHOUT PERMISSION OR A SEARCH WARRANT.

2.    WHETHER THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN ITS TREATMENT OF THE CONSOLIDATED NORTH CAROLINA JUDGMENT AS TWO SEPARATE SENTENCES RATHER THAN AS A SINGLE CONSOLIDATED SENTENCE.

## STATEMENT OF THE CASE

Officers with the Durham County Police arrested Mr. Little on April 9, 2011 after receiving reports of shots being fired from the back porch area of the home.  The grand jury for the Middle District of North Carolina filed a one-count indictment charging him with being a felon in possession of a firearm. (JA 6)

1

On November 9, 2012 Mr. Little filed a motion to suppress a firearm which the officers seized during the arrest. (JA 7-9)  The government filed a response on November 30, 2012. (JA 16-26)  The parties appeared before the Honorable N. Carlton Tilley on December 7, 2012. (JA 27)  Following a hearing, Judge Tilley denied the motion to suppress.

Mr. Little and the government entered a written plea agreement on December 12, 2012 in which Mr. Little agreed to enter a conditional plea of guilty preserving his right to appeal the district court's denial of his motion to suppress. (JA 84-89)  The matter came back before Judge Tilley on March 15, 2013.  Judge Tilley sentenced Mr. Little to seventy-seven (77) months imprisonment.  The judgment was subsequently signed on April 8, 2013 and entered on April 9, 2013. (JA 102-107)  Mr. Little entered notice of appeal on April 15, 2013. (JA 108)

## STATEMENT OF THE FACTS

During the evening of April 8, 2011 the Durham County Police Department received several calls reporting the sound of gunshots in the area of Lime Street and Buffalo Way in Durham. (JA 112)  Several officers responded to the calls. Officer John Lloyd was the first to arrive on scene. (JA 33)  Once in the neighborhood he did not hear any more shots fired.  He and other officers talked with others in the neighborhood regarding which home they had heard the gunshots coming from and they were directed to a residence at 2043 Buffalo Way. (JA 35)

2

The officers then decided to conduct a knock and talk at the home. As they approached, the front door opened and two males stepped outside. (JA 36) Officer Lloyd explained to Mr. Little why they were there and conducted a frisk of his outer clothing finding no weapons. (JA 37) Officer Lloyd testified that during the frisk he observed Mr. Little's demeanor and that he appeared to be intoxicated. (JA 38)

There was then a conversation during which the officer asked Mr. Little if he had anything illegal in the house. Mr. Little stated that he did not. Officer Lloyd testified that during this time Mr. Little seemed very nervous. Officer Lloyd asked again about anything illegal in the house and Mr. Little pointed to a bottle of liquor on the table through the open door and said that was the only thing that he had. (JA 38-39)

At that point, according to the testimony of Officer Lloyd, Mr. Little "[a]ll of a sudden, he put his head down and turned and walked right into the house without saying anything." (JA 39) Officer Little then followed "directly behind" Mr. Little as Mr. Little went through the dining room and into the kitchen. Once in the kitchen, Officer Lloyd saw Mr. Little standing next to the counter with his hand in front of him "manipulating or in the process of dealing with something." (JA 43).

Officer Lloyd "bear-hugged Mr. Little and tackled him to the ground." (JA 43) A hand gun was subsequently found on the counter where Mr. Little had been standing. (JA 44) Judge Tilley denied the motion to suppress. (JA 73-76)

Following the district court's denial of the motion to suppress Mr. Little and the government entered in to a plea agreement on December 12, 2012. (JA 84-89) Mr. Little entered a conditional guilty plea preserving his right to appeal the denial of his motion to suppress.

Prior to sentencing the probation office prepared a presentence investigation report on February 27, 2013 in which Mr. Little's base offense level was determined to be 24. (JA 114) He received a two level decrease pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility and another one level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b). (JA 114) The probation officer attributed 3 criminal history points to Mr. Little for a December 17, 1998 conviction following an arrest on May 18, 1998 for felony breaking and/or entering and felony larceny. (JA 116) Mr. Little was also given one criminal history point for a conviction resulting from an arrest on May 21, 2013 for felony robbery with a dangerous weapon and felony second degree kidnapping. This conviction, however, was consolidated into the single judgment entered on December 17, 1998. The resulting calculation – along with the two additional

points pursuant to U.S.S.G. § 4A1.1(d) – resulted in a criminal history score of ten and a criminal history category of V with an associated guideline range of 70 to 87 months.  (JA 123)

Judge Tilley stated that "I think a sentence in the middle of the guideline range would appropriately address what has taken place in this case, so I am going to select a sentence of 77 months, to be followed by three years of supervised release."  (JA 97)  A judgment reflecting these conditions was entered on April 9, 2013.  (JA 102-107)

## SUMMARY OF ARGUMENTS

The district court committed reversible error by denying Mr. Little's motion to suppress.  Durham police officers followed Mr. Little when he went back into his home.  The officers did not have or even ask for permission to enter.  They did not have a warrant and there were no applicable exigent circumstances in that they had already frisked Mr. Little and found no guns.

Furthermore, the sentence which the district court imposed was based on the assessment of points for separate offenses which were consolidated into one judgment.  As this Court has recently held, a consolidated judgment under North Carolina law is one sentence.

# ARGUMENT

**I.**   **THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY DENYING MR. LITTLE'S MOTION TO SUPPRESS THE EVIDENCE SEIZED BY LAW ENFORCEMENT WHICH WAS DISCOVERED AFTER OFFICERS ENTERED MR. LITTLE'S HOME WITHOUT PERMISSION OR A SEARCH WARRANT.**

## STANDARD OF REVIEW

On a motion to suppress, this Court reviews *de novo* the legal conclusions of the district court but reviews for clear error the factual findings. *United States v. Foster*, 634 F.3d 243 (2011). The Court construes the evidence in the light most favorable to the government. *United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998).

## DISCUSSION OF ISSUE

The testimony presented during the hearing on the motion to suppress was quite clear regarding the circumstances leading to the officer entering Mr. Little's home. Mr. Little came out the front door before an officer actually knocked. The officer frisked him for officer safety to ensure that he did not have any weapons. The officer asked Mr. Little if he had anything illegal in the house and Mr. Little said that he did not. The officer asked Mr. Little if he had any weapons in the house two times and both times Mr. Little denied it and pointed at a bottle of liquor saying that was all he had. (JA 38-39)

Mr. Little was not in custody during this exchange with law enforcement. He was not handcuffed. Officer Lloyd never apprised him of his *Miranda* rights. Officer Lloyd never stated that Mr. Little could not reenter the home. Officer Lloyd never asked for permission to enter the house or asked if Mr. Little would consent to a search of his home. Officer Lloyd also never obtained a warrant to enter Mr. Little's house. Mr. Little's movement was not restricted in any way and he just turned and went back into his house. Officer Lloyd followed him without permission. They went into and through the house to the kitchen where the arrest took place. This entry into Mr. Little's house was without either a warrant or consent. It was unwarranted and was a violation of Mr. Little's Fourth Amendment rights.

The district court made findings that the officers on the front porch knew that neither of the individuals they were questioning had a weapon. Judge Tilley, however, concluded that "a reasonable officer, for protection of the officers, but maybe even more importantly, protection of the public and the people who lived around there where those shots had been fired, was warranted in going behind Mr. Little." (JA 74-75) The court went on to state that "I do find there were exigent circumstances involved under that situation."

7

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. There are, of course, certain exceptions to this protection such as the use of a valid warrant or obtaining valid consent. Neither of those exceptions applied in this case. Instead, the district court found that there were exigent circumstances which authorized entry in to the home.

This Court has stated that "warrantless searches and seizures inside a home are presumptively unconstitutional." *United States v. Yengel*, 711 F.3d 392, 397 (4th Cir. 2013), *citing*, *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). "The rationale underpinning the exigent circumstances doctrine is that when faced with an immediate and credible threat or danger, it is inherently reasonable to permit police to act without a warrant." *Id*. In the case at bar, there was neither an immediate nor a credible threat or danger. There were not exigent circumstances to justify entry into the home.

In *Yengel*, law enforcement responded to a call regarding a domestic assault. When the officer arrived he was told that there were firearms and a grenade inside the house and he was shown to an upstairs bedroom. The officer was shown a locked closet and he pried it open with a screwdriver. During this warrantless search the officer did not evacuate the home or nearby homes or even remove a

child who was sleeping in the next room.  After finding a sealed container the officer called in an explosive disposal team.  No grenade was located but a partially constructed explosive device was found and Mr. Yengel was charged with possession of an unregistered firearm.  The district court granted Mr. Yengel's motion to suppress finding that there was neither consent nor exigent circumstances to justify the warrantless search.

On appeal, this Court considered and rejected the government's argument that exigent circumstances justified the search.  The Court noted that the Supreme Court has recognized a variety of specific circumstances including "when officers must enter to fight an on-going fire, prevent the destruction of evidence, or continue in 'hot pursuit' of a fleeing suspect."  *Id*., at 396, *citing*, *Brigham City*, *supra*.  More general emergencies may also constitute an exigency if there is an objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within.  *Id*., at 397, *quoting*, *United States v. Moss*, 963 F.2d 673, 678 (4th Cir. 1992).  That "objectively reasonable belief must be based on specific articulable facts and reasonable inferences that could have been drawn therefrom."  *Id*., *citing*, *Mora v. City of Gaithersburg*, 519 F.3d 216, 224 (4th Cir. 2008).  This Court has provided a non-exhaustive list of factors including:

> (1)  the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.

*Id*., *quoting*, *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981)

The *Mora* Court also looked at the balance between the government's interest in a protective search with the individual's interests which could justify a warrantless search in the "preventive action" context.

The *Yengel* Court looked at all of these factors in the context of the grenade search affirmed the district court's determination that there were no exigent circumstances.  The Court noted that (1) a general statement that there might be a grenade was insufficient to believe that it might be "live" or about to detonate; (2) the "immobile and inaccessible" location of it further diminished any threat; and (3) the failure to conduct any evacuation was evidence that a reasonable officer did not believe there was an ongoing emergency.  *Yengel*, 711 F.3d at 399.

A similar situation arose in *United States v. McCraw*, 920 F.2d 224 (4th Cir. 1990).  In *McCraw* officers involved in a drug investigation determined that a subject of the investigation was in a hotel room.  Officers knocked on the door without announcing themselves and when the door was opened halfway while staying inside the room.  When he saw the officers he tried to close the door but the officers forced their way inside and arrested him.  On appeal the Fourth Circuit

stated that the "suppression motion presents the question of whether officers without an arrest warrant but with probable cause may, absent exigent circumstances, force their way into a hotel room and arrest the occupant who, from inside his room, partially opens the door to determine the identity of officers knocking on the door. We hold that a person does not surrender his expectation of privacy nor consent to the officers' entry by so doing, and that his arrest inside the room under such circumstances is contrary to the Fourth Amendment and the United States Supreme Court's decision in *Payton v. New York*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980)." *Id*., at 228.

*McCraw* is similar to the case at bar in that the defendant's conduct was essentially just opening a door. Just as a defendant would not surrender his expectation of privacy in a hotel room by opening the door to see who was knocking, Mr. Little did not forego his expectation of privacy in his residence by entering after speaking with law enforcement.

Application of the *Yengel/Turner* factors do not, on balance, justify a finding that a reasonable officer could believe that exigent circumstances existed to enter the home. First, there was no evidence regarding the time necessary to obtain a warrant. Although there was some evidence that the situation was considered urgent because of the calls regarding shots fired. However, there was no reasonable inference that officers were unable to secure the situation while obtaining a warrant, or, even asking for permission to enter.

11

Similarly, there was no evidence presented which would support a belief that contraband was about to be removed or destroyed or that police guarding the home would be in any danger while waiting on a warrant in the same sense that they might be threatened by some type of explosive device. Any concern of the destruction of property would have been ameliorated by taking Mr. Little into custody during the initial stage of his encounter with the officer. Under factor four – that the possessors of the contraband are aware that police are on their trail – it is clear that Mr. Little and his companion knew of the police presence as soon as they opened the door. Still, this factor would not affect the analysis at all if they were taken into custody. Lastly, a firearm is not readily destructible and not at all if the possessor is detained and not able to reach it.

In the case at bar, officers had obtained information from unknown individuals that the shots in question may have come from the residence where they found Mr. Little and another man. The officers had no prior opportunity to assess the "informants" information or credibility. Once they arrived at the home the frisked Mr. Little and found no weapons. During this time the officer apparently found no probable cause to place Mr. Little under arrest. The only action by Mr. Little which led to the intrusion into his home, his arrest and seizure of the evidence in question was that he turned around and went into his home. This is insufficient to demonstrate exigent circumstances.

12

The Court has stated that "[t]he existence of exigent circumstances must be determined as of the moment of the warrantless entry of the officers onto the premises of appellee." *United States v. Reed*, 935 F.2d 641, 643 (4th Cir. 1991). "Courts should consider 'the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers.'" *Id*., at 643, *quoting*, *United States v. Wysocki*, 457 F.2d 1155, 1160 (5th Cir. 1972).

Here, the fact than a handgun was found after officers came into the home, after they went through the dining room into the kitchen and after they tackled Mr. Little to the ground is insufficient to demonstrate that a reasonable officer would have seen the existence of exigent circumstances at the moment Mr. Little turned and entered his home. Rather, Mr. Little talked with the officers and when he was done went back inside his house.

Furthermore, after the arrest, officers asked Mr. Little about the gun which was located in his home and he made incriminating statements. Those statements should be suppressed as the fruit of the poisonous tree. *See*, *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The statements would not have been obtained without the earlier actions of law enforcement which violated the Fourth Amendment.

13

II.    **THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN ITS TREATMENT OF THE CONSOLIDATED NORTH CAROLINA JUDGMENT AS TWO SEPARATE SENTENCES RATHER THAN AS A SINGLE CONSOLIDATED SENTENCE.**

**STANDARD OF REVIEW**

The standard of review in reviewing the district court's entry of a sentence is twofold. The district court's factual findings are reviewed for clear error but review is *de novo* with respect to legal interpretations of the Sentencing Guidelines. *United States v. Hudson*, 272 F.3d 260 (4th Cir. 2001); *United States v. Kinter*, 235 F.3d 192 (4th Cir. 2000). The Court reviews sentencing decisions for unreasonableness. *United States v. Bartram*, 407 F.3d 307 (4th Cir. 2005). *See also*, *United States v. Carter*, 601 F.3d 252 (4th Cir. 2010).

**DISCUSSION OF ISSUE**

On May 18, 1998 Mr. Little was arrested for (1) felony breaking and entering and (2) felony larceny. (JA 115) He was arrested for felony robbery with a dangerous weapon and felony second degree kidnapping on May 21, 1998. Both of these cases were heard on December 17, 1998 and the court consolidated judgment on all of the offenses into a sentence of 51 to 71 months. The calculations made by the probation officer in the presentence investigation report included 3 criminal history points for the May 18th arrest and one point for the May 21st arrest. Although the probation officer noted that it was a "single sentence" the PSR still added an additional point for the second arrest. (JA 115-116)

14

On June 24, 2013 this Court released a decision in the matter of *United States v. Davis*, No. 12-4346, which is directly on point. In *Davis*, the defendant had different prior arrests which were consolidated into one judgment in North Carolina state court. After a later federal conviction the probation officer recommended that Mr. Davis be sentenced as a career offender. The district court considered whether the consolidated judgment constituted one prior felony conviction or two. The government argued that although the convictions were consolidated there was an intervening arrest such that they should be treated as separate matters. This the Court looked at the requirements of U.S.S.G. § 4B1.1(a)(3) requiring two prior felony convictions. The Court noted that under § 4B1.2(c) there was a reference to sentences rather than a single sentence.

In the *Davis* case, as well as in this case, the North Carolina court exercised its authority pursuant to N.C. Gen. Stat. § 15A-1340.15(a) to "consolidate the offenses for judgment and impose a single judgment for the consolidated offenses." "Thus, when a North Carolina court consolidates offenses for judgment, the outcome is a single judgment for which the length of the sentence is controlled by the maximum sentence for the most serious offense." *Id.*, *supra*, at p. 7. The *Davis* Court went on to hold that "where a defendant receives a 'consolidated sentence' (or 'consolidated judgment') under North Carolina law, it is one sentence and absent another qualifying sentence, the enhancement is inapplicable." *Id.*, *supra*, at p. 10.

15

Just as in the *Davis* case, in this matter Mr. Little had a criminal history involving separate arrests which were consolidated into a single judgment. The presentence investigation report which imposed points for each of the sets of arrests. This had the effect of Mr. Little having eight points along with two additional points for being on probation resulting in 10 total points and a criminal history category of V. Although the probation officer essentially comingled the offenses and then assigned points to each, without the one additional point Mr. Little would have been in the criminal history category IV. With the same base offense level of 21 and a criminal history category of IV the guideline range would have been 57-71 points. Instead, the district court imposed a sentence of seventy-seven (77) months. The district court's acceptance of the presentence investigation report, therefore, constituted reversible error and this Court should vacate the district court's judgment.

## <u>CONCLUSION</u>

The district court committed reversible error by denying Mr. Little's motion to suppress and in entering a sentence based upon duplicative criminal history points. Mr. Little respectfully requests that this court vacate the judgment and remand the matter for further proceedings.

16

RESPECTFULLY SUBMITTED
LEARON CHATMON LITTLE

/s/ John Carlyle Sherrill, III
John Carlyle Sherrill, III
SHERRILL & CAMERON, PLLC
117 West Council Street
Salisbury, NC  28144
(704) 633-5723

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

        this brief contains <u>3,751</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

<u>/s/John Carlyle Sherrill, III</u>
John Carlyle Sherrill, III

*Counsel for Appellant*

Dated: July 9, 2013

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 9, 2013, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF System, which will send notice of such filing

to the following registered CM/ECF users:

> Michael A. DeFranco
> OFFICE OF THE
>   UNITED STATES ATTORNEY
> 101 South Edgeworth Street
> P. O. Box 1858
> Greensboro, NC  27401
> (336) 333-5351
>
> *Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

> /s/ Melissa A. Dockery
> Melissa A. Dockery
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street, Suite 230
> Richmond, VA  23219